The Buckeye Union Casualty Co. *v.* Strashun et al.

(Decided March 5, 1934.)

*Mr. Henry E. Beebe,* for plaintiff in error.
*Messrs. Rubenstein & Falk,* for defendants in error.

Hamilton, P. J.   This lawsuit grows out of an action to recover on a policy of insurance issued by the plaintiff in error to the defendant in error, Dr. A. Strashun, indemnifying him "for all loss by burglary, theft, larceny or robbery." The policy defines robbery as follows: "Robbery as used herein shall mean a felonious and forcible taking of such property from any of the individuals covered hereby who is over eighteen years of age, accompanied by bodily injury or threat of bodily injury to the person from whom the property is taken, or by putting such person in fear of bodily injury."

Dr. Strashun suffered a loss of a diamond tie pin of the value of $800, at the Albee Theater, Cincinnati.

He filed his claim with the insurance company, The Buckeye Union Casualty Company, which company refused payment. He thereupon filed suit in the Municipal Court of Cincinnati. Upon the trial of the case in the Municipal Court, Dr. Strashun secured a judgment of $785, with costs. On error to the Court of Common Pleas that judgment was affirmed. Error is prosecuted to this court, seeking a reversal of the judgments of the lower courts.

The claim here is that the facts of the case did not bring the plaintiff below within the robbery clause, as defined in the policy of insurance; that there is no evidence of bodily injury, or threat of bodily injury, or the taking of property by putting the insured in fear of bodily injury.

The evidence tends to show the following state of facts:

Dr. Strashun, an elderly man, together with his wife, entered the Albee Theater, and on account of the crowd were unable to immediately go into the theater proper. They were held up in the crowd, which crowd was held back by a cord and brass bar. The doctor and his wife were in behind the cord and brass bar, waiting to be ushered into the theater. While so situated someone pressed the brass bar roughly against the doctor, hurting his leg. He expostulated with the man doing this, who was leaning over. The man responded he was doing his duty, as he was an employee. At the same moment, a man forced his way between the doctor and his wife, elbowing the wife to one side with one arm, and at the same time pressing his other arm against the upper part of the doctor's body. The wife expostulated with the man and asked what he meant by his actions. At that moment the cord was released and the people moved forward, and the doctor and his wife went to a seat in the theater. The doctor's clothing was mussed up, and his tie disarranged.

While arranging his clothing he noticed his diamond tie pin, which he had worn for thirty years, was gone. There was a hole in the doctor's tie, tending to show that the pin had been removed by force. The pin had a safety clasp, which fastened to the tie. Dr. Strashun thereupon notified the theater manager of the loss. The police were called and some detectives came over, but were unable to recover the loss.

Due proof of loss was filed with the insurance company, and the claim was rejected.

It is contended that the judgment was against the weight of the evidence. The accuracy of the doctor's testimony given at the trial is challenged as being inconsistent with a written statement concerning the facts surrounding him and connected with the occurrence in the theater building. We have examined the evidence in connection with the written statement which is placed in the record, which was admitted for the purpose of affecting the doctor's credibility, but we do not find the discrepancies to be sufficient to overturn the evidence as given by the doctor. The doctor is quite an elderly man, and there is sufficient in the statements and the evidence given by his wife to support the facts as above briefly recited.

Plaintiff in error seeks to differentiate between the terms ordinarily used, "robbery by force and violence", and "robbery by force, accompanied by bodily injury", which was the term used in the policy in question. In other words it is claimed that it is necessary to show force and bodily injury, and that the evidence failed to show any bodily injury. The policy does not state the amount or extent of bodily injury necessary to come within the terms of the policy. We must, therefore, conclude that any bodily injury, however slight, would be within the terms of the policy. As we have set forth in the brief statement of the evidence, the doctor was suffering pain from the effect

of the brass bar being pressed against his leg, which was undoubtedly done for the purpose of attracting his attention from any other part of his body. The policy does not state there must be an abrasion. There can be no pain without injury, when the pain comes from external force. The doctor was also being pressed in the upper part of his body by a man on the other side. There is no question here of being put in fear, as both the doctor and his wife testified that they were not in fear, as they did not know the intent of the parties who were causing their discomfort. They were crowded and pushed about, and suffered discomfort and pain.

There have been several states in which the question arose as to whether or not the taking from the person constituted robbery within the terms of an insurance policy, or in the prosecution of a person caught in the act, indicted for robbery and tried for that offense. The case of *Stockton* v. *Commonwealth,* 125 Ky., 268, 101 S. W., 298, was a case where the two defendants met the prosecuting witness. One of them asked him if he could change a ten dollar bill, holding out his hand containing some silver. When the prosecuting witness held out his hand containing the ten dollar bill, one of the defendants snatched it from his hand, and both ran away. The court held the defendants guilty of robbery, stating in the opinion that "the felonious taking of property from a person against his will, by force or violence, however slight, constitutes the offense." The court in the opinion cites *Snyder* v. *Commonwealth,* 21 Ky. Law Rep., 1538, 55 S. W., 679, where the court said:

"While to pick one's pocket without the use of some force or violence or putting in fear is not robbery, yet if the victim is being pushed or shoved about by the pickpocket or his associates for the purpose of diverting his attention, and the crime is then accomplished,

it is robbery, even if the victim is at the time unaware of his loss." And the court held in the *Snyder case* that the question was one for the jury.

In the case of *Usom* v. *State,* 97 Ga., 194, 22 S. E., 399, a woman and her daughter were driving on a public road, when they were overtaken by a negro man walking. He walked by the side of their wagon for a few moments, then ran to the wagon and seized a satchel which was hanging on the front of the wagon. The woman seized the satchel, and tried to keep him from getting it, but he pulled it from her, breaking the handle, and ran away with it. The court held the jury was justified in finding him guilty of robbery.

In *State* v. *Spivey,* a Missouri case, reported in 204 S. W., 259, the court states the rule as follows, deduced from a long line of authorities:

"Snatching a valuable article from another is always denominated robbery where any force is exercised either to overcome the resistance of the person robbed or in detaching the article taken where it is fastened in some way to the clothing or person of the one robbed."

It is argued by counsel that these cases are not controlling, for the reason that "robbery" is defined in the contract of insurance, and that definition requires bodily injury.

Based upon the authorities cited, and on reason, our conclusion is that the pushing of the brass rail against the doctor's leg, causing him pain and suffering, and the pushing of the man's elbow against his chest and the upper part of his body, both of which caused him to complain, evidently for the purpose of perpetrating the act, and the mussing up of his clothing and the disarranging of his tie, fully justified the court, sitting as a jury, in finding that he did suffer bodily injury within the meaning of the policy.

The second ground of error complained of is the

statement of the trial judge, appearing on page 20 of the bill of exceptions.

While the case was in progress the court stated:

"The Court will rule now, as a matter of law, that under the terms of this policy, it is not necessary for a person to point a gun and threaten to kill a man, or back him up against a wall. If this policy—if that has to be done in order,—or the only way to recover under the policy, then the policy isn't worth the paper it is written on."

It is contended that the trial judge sitting as a jury, in addition to being a judge of the law, committed error in so expressing himself during the trial of the case. Since the case was being tried to the court, the court might have prematurely wrongfully expressed his opinion, but that does not necessarily mean he would do so at the end of the trial, after hearing all the evidence. Moreover, it did not prejudice the defendant. The judgment is not contrary to law, and there is sufficient proof to support the judgment.

The judgment of the Court of Common Pleas, affirming the judgment of the Municipal Court, is affirmed.

*Judgment affirmed.*

CUSHING and Ross, JJ., concur.